**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 11, 2006**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 04-61037
Summary Calendar

RICARDO ADOLFO OLIVARES-CARRANZA,

Petitioner,

versus

ALBERTO R. GONZALES, U.S. ATTORNEY GENERAL,

Respondent.

--------------------
Petition for Review of a Decision of the
Board of Immigration Appeals
BIA No. A28 843 780
--------------------

Before HIGGINBOTHAM, BENAVIDES and DENNIS, Circuit Judges

PER CURIAM:[*]

The petitioner, Ricardo Adolfo Olivares-Carranza (Olivares),
is a citizen of El Salvador who petitions this court to review the
decision of the Board of Immigration Appeals (BIA) denying relief
under the Convention Against Torture (CAT).

Olivares asserts that he left El Salvador in November 1981
because he feared persecution due to his political activities.
According to Olivares, he became involved in politics in El
Salvador when he was 15 years old (around 1978).  He joined the
MERS, a political group that opposed the El Salvadorian government,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and became a leader and organizer who spoke at many political rallies. Olivares claims that, when he was 15, he was assaulted by government agents who injured his hand by hitting it with an M-16 firearm. He further alleges that when he was 17 years old his girlfriend was killed for being an MERS sympathizer. Olivares believes that her murderers were members of a government death squad. According to Olivares, in July 1981, he and two friends were assaulted by alleged members of a death squad. His two friends were killed but he escaped with a bullet wound to the leg. Later, Olivares fled for his safety and eventually illegally entered the United States in 1983.

On February 27, 1990, Olivares was convicted in a Texas District Court for possession of cocaine, and sentenced to eight years imprisonment and eight years probation. Olivares was placed in removal proceedings on April 11, 1990, and he subsequently admitted deportability and applied for political asylum. He maintains that he would be tortured if he returned to El Salvador because of his involvement in the MERS, because he would be a "new face" that was likely to attract attention, and because he would "say something that [would] get [him] in trouble" if he say any injustice taking place in El Salvador. Olivares also claims that if he returned to El Salvador his wife and three children would come with him and would be subjected to threats and danger.

For the thirteen years following the commencement of the removal proceedings, various issues were litigated in the case.

Ultimately, the Immigration Judge (IJ) found that Olivares' prior conviction for possession of cocaine constituted an aggravated felony, which made him ineligible for political asylum and withholding of removal. The IJ also found that Olivares was ineligible for relief under the CAT due to his prior conviction, but that he might qualify for deferral of removal under the regulations if he could sustain his burden of proof under the CAT. After a hearing, the IJ denied relief, finding that the petitioner failed to satisfy his burden of proof under the CAT. The BIA affirmed the decision.

We review legal conclusions de novo and findings of fact for substantial evidence. Lopez-Gomez v. Ashcroft, 263 F.3d 442, 444 (5th Cir. 2001). We will not reverse a BIA decision unless the evidence is "'so compelling that no reasonable fact-finder could conclude against it.'" Moin v. Ashcroft, 335 F.3d 415, 419 (5th Cir. 2003). In order to be granted relied under the CAT, Olivares must show that it is more likely than not that he would be tortured if removed to El Salvador. 8 C.F.R. §208.16(c)(2) (2002). The CAT defines torture as "any act by which sever pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining...information or a confession, punish[ment]..., or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public

official or other person acting in an official capacity." 8 C.F.R. §208.18(a)(1) (2002).

In this case, Olivares has not made the requisite showing. The IJ did find that the evidence supported the conclusion that death squads continue to exist in El Salvador, but to an lesser extent than suggested by Olivares. Further, the IJ found that Olivares was not entirely credible, given his contradictory reasons for believing that he would be tortured in El Salvador. As the IJ noted, during the period during which Olivares had experienced violence in El Salvador (over 20 years ago), he had only been detained once for his political participation in political events. Further, none of Olivares' family members who continue to reside in El Salvador have ever been detained by a death squad of other alleged faction of the government. Consequently, the BIA was correct in finding that Olivares' evidence does not rise to the likelihood of torture that is required for relief under the CAT.

The petition for review is DENIED.